Argued and submitted May 19; resubmitted In Banc October 10, affirmed
November 22, 1995, petition for review allowed April 2, 1996 (323 Or 114)
See later issue Oregon Reports

Christopher LANE,
*Appellant,*

*v.*

Robert Larry BROWN,
*Respondent.*

(CC93-73; CA A84805 (Control))

Laurie Joy INGER,
*Appellant,*

*v.*

Robert Larry BROWN,
*Respondent.*

(CC93-7; CA A84806)

906 P2d 821

Glen Downs argued the cause for appellants. With him on the brief was Doblie & Associates.

Denny Zikes argued the cause and filed the brief for respondent.

ARMSTRONG, J.

Landau, J., concurring.

## ARMSTRONG, J.

Plaintiffs sought damages from defendant for injuries they sustained when the car in which they were traveling was struck by defendant's pickup truck. They appeal from a judgment entered on a jury verdict for defendant and assign error to the trial court's decision to give Uniform Civil Jury Instruction 20.08, which is an instruction about a person's response to an emergency. We affirm.

Because the jury found in favor of defendant, we recite the facts in the light most favorable to him. On November 15, 1991, defendant was driving west on Highway 26 near Mount Hood. Defendant had driven approximately 200 miles before the accident. The weather was clear, visibility was good, and the roads were dry. The tires on defendant's pickup were almost new, studded snow tires. He had the pickup in 2-wheel drive, because the owner's manual recommended against driving the pickup in 4-wheel drive on dry pavement.

Defendant's speed did not exceed 50 miles per hour, in a 55-mile-per-hour zone. As defendant approached a place where the road curved to the right, he slowed to 45 miles per hour. He explained that, on a prior occasion, his brother had hit a deer, and he was especially watchful in wooded areas in case a deer ran out onto the road. Suddenly, the rear of defendant's pickup skidded to the right. Defendant tried to correct the skid by letting up on the accelerator, turning the steering wheel in the direction of the skid and keeping his foot off the brake pedal. Defendant was unable to regain control of the pickup. It shot to the left, slid across the highway and collided with plaintiffs' car.

An eyewitness, who had been driving behind defendant, stopped his pickup and placed flares in the road to warn other motorists of the accident. He testified that the road was slick and icy at the spot where defendant's pickup began skidding. He stated that the road had been dry and clear up to that point. An ambulance driver who drove to the accident testified that he had approached the scene from the east, the same direction from which defendant had been driving, and that he had encountered no adverse road conditions in the 15 miles that he had driven to the accident.

At trial, defendant requested that the court give UCJI 20.08, the "emergency" instruction, which provides:

"People who are suddenly placed in a position of peril through no negligence of their own, and who are compelled to act without opportunity for reflection, are not negligent if they make such a choice as a reasonably careful person placed in such a position might make, even though they do not make the wisest choice."

Plaintiffs objected, claiming that the evidence did not support giving the instruction. The court gave the instruction. The jury found that defendant was not negligent and returned a verdict in his favor.

■■   On appeal, plaintiffs argue that the court erred in giving the emergency instruction, because the instruction should not be given in an ordinary automobile accident case. It is true that the emergency instruction should be avoided "and that rarely, if ever, will a failure to give the instruction constitute reversible error." *Jones v. Mitchell Bros.*, 266 Or 513, 526, 511 P2d 347 (1973); *see also, e.g., Swanson v. Hale*, 273 Or 138, 140, 539 P2d 1073 (1975); *Rambo v. McCulloch*, 90 Or App 392, 395, 752 P2d 347 (1988). Under appropriate circumstances, however, it is not error to give the instruction. *Rambo*, 90 Or App at 395. We review to determine whether there was sufficient evidence to support a finding of an emergency. *Id.*

Plaintiffs argue that evidence showed that defendant was not taking reasonable precautions, because he had not checked weather reports and did not have his pickup in 4-wheel drive. Plaintiffs appear to contend that defendant's negligence contributed to the peril. Thus, according to plaintiffs, defendant was not entitled to have the court give UCJI 20.08.

Other evidence, however, supported the trial court's decision to give the instruction. The patch of ice that caused defendant's pickup to skid appears to have been isolated. Testimony was consistent that the road was otherwise dry and that the weather had been clear. Defendant had driven approximately 200 miles before the accident and had encountered no other patches of ice. Additionally, there was evidence that, before the accident, defendant was driving carefully,

under the posted speed limit, and was on the lookout for danger.

The fact that the evidence *might* support a finding that defendant's negligence contributed to his peril does not mean that it was error to give the emergency instruction. The instruction states that it applies when people are "suddenly placed in a position of peril through no negligence of their own." On the record in this case, the jury *could* find that defendant's peril was not caused by any negligence on his part. Because the evidence supports a finding that defendant was not negligent in causing the peril, it was not error to give the instruction.

Plaintiffs also argue that the instruction was inapplicable because defendant had no opportunity for reflection or choice once the pickup began skidding. Thus, argue plaintiffs, defendant could not have "[made] such a choice as a reasonably careful person placed in such a position might make," because he had no choice to make. *See Scott v. Iverson*, 120 Or App 538, 540-42, 853 P2d 302, *rev den* 317 Or 486 (1993) (when defendant has no courses of action between which to choose, the emergency instruction is inapplicable).

The evidence in this case indicates, however, that defendant made a conscious choice to react to the skid as he did. As mentioned above, defendant testified that he reacted as he had been taught in driver's education by steering into the skid and keeping his foot off the brake. Defendant could have steered the car in another direction, or he could have hit the brakes, or both. The evidence permitted the inference that defendant was presented with a choice of reactions, and it was for the jury to determine whether defendant's choice was "such a choice as a reasonably careful person placed in such a position might make." In the light of the evidence presented, we cannot say that the court erred in giving the emergency instruction.

Affirmed.

**LANDAU, J.,** concurring.

I agree with the majority's decision to affirm the judgment of the trial court. I am persuaded that, under the Supreme Court's case law, the trial court did not commit

reversible error in delivering an "emergency" instruction. I am also convinced, however, that the court's cases are difficult to reconcile and deserve careful, critical scrutiny. Were that my only concern, I would not presume to write separately. The problem is that, in attempting to deal with the internal inconsistencies of the Supreme Court's case law, our own decisions have become somewhat incongruous as well, and the majority's decision in this case cannot be reconciled with those decisions. I would overrule our inconsistent cases, affirm the trial court and hope that the Supreme Court, in this or some other appropriate case, straightens out the case law by simply condemning the use of the instruction outright.

I begin by observing that the Supreme Court has repeatedly questioned the propriety of an emergency instruction. The court has characterized it as " 'treacherous' and one not to be often given." *Rankin v. White*, 258 Or 252, 256, 482 P2d 530 (1971). It is "unnecessary to give," *Ballard v. Rickabaugh Orchards, Inc.*, 259 Or 200, 207, 485 P2d 1080 (1971), and "should be avoided." *Harkins v. Doyle*, 271 Or 664, 667, 533 P2d 785 (1975).

The court's professed antipathy for the instruction is warranted. The instruction's message already is included in any general negligence instruction. The court itself has noted that

> "[the] usual instructions on negligence sufficiently cover 'what a reasonably prudent person would do under all the circumstances, including those of sudden emergency.' "

*Jones v. Mitchell Bros.*, 266 Or 513, 526-27, 511 P2d 347, 514 P2d 350 (1973) (quoting *Evans v. General Telephone*, 257 Or 460, 467, 479 P2d 747 (1971)). Even assuming that the instruction simply restates the general standard of care, that repetition is not harmless. As Justice Tongue complained:

> "The vice of the emergency instruction is that it gives a party (whether plaintiff or defendant) a 'double shot' on the issue of whether his conduct was such, considering all of the circumstances, as to satisfy his duty to exercise reasonable care."

*Weitzel v. Wingard*, 274 Or 185, 211, 546 P2d 121 (1976) (Tongue, J., dissenting). The instruction also is an unnecessary and improper judicial comment on the evidence and is

likely to affect a jury's determination of negligence. Through the delivery of the emergency instruction, a trial court selects an aspect of the evidence — namely, an emergency situation or perilous position — and suggests to the jury how that particular evidence should bear on its determination of a defendant's negligence. The emergency instruction is likewise confusing. Theoretically, the instruction applies only to decisions made once an emergency is encountered. In all likelihood, however, juries are inclined to excuse or disregard negligent acts that take place before the emergency is encountered on the basis of sympathy evoked through the instruction's emphasis on actions taken in circumstances under which a party supposedly has little or no control.

For those and other reasons, the emergency instruction has been subject to scholarly criticism, *see, e.g.*, Douglas J. Gunn, *Torts — Negligence — The Sudden Emergency Doctrine is Abolished in Mississippi*, 51 Miss LJ 301, 307-09 & nn 42-47 (1980); William G. Hollingsworth, *The Sudden Emergency Doctrine in Florida*, 21 U Fla L Rev 667, 675-82 (1969); Richard C. Kirby, *Justice v. Harrison: The Emergency Doctrine*, 3 Okla City Univ L Rev 723, 729-31 (1979); E. Wayne Thode, *Imminent Peril and Emergency in Texas*, 40 Tex L Rev 459, 461 (1962); Lloyd L. Wiehl, *Instructing a Jury in Washington*, 36 Wash L Rev 378, 383 (1961), and has been rejected outright in a number of jurisdictions, *see, e.g.*, *McClymont v. Morgan*, 238 Neb 390, 393-94, 470 NW2d 768, 772 (1991); *Knapp v. Stanford*, 392 So 2d 196, 199 (Miss 1980); *Simonson v. White*, 220 Mont 14, 25, 713 P2d 983, 989-90 (1986); *see also DiCenzo v. Izawa*, 68 Haw 528, 543, 723 P2d 171, 178-81 (1986).

Notwithstanding its admonition that the instruction should be avoided, and the good reasons for saying so, the Supreme Court has refused to jettison the instruction entirely. *Durnford v. Worden*, 242 Or 536, 540, 410 P2d 1020 (1966); *see also Tuite v. Union Pacific Stages, Inc.*, 204 Or 565, 595, 284 P2d 333 (1955). Indeed, the court regards the question of the appropriateness of giving the instruction as dependent upon questions of fact, which the jury must determine. *Swanson v. Hale*, 273 Or 138, 140-41, 539 P2d 1073 (1975); *Jaeger v. Estep*, 235 Or 212, 222, 384 P2d 175 (1963). As long as the record contains any evidence that a driver was

faced with a sudden danger that was not the result of his or her own negligence and required "quick action * * * as to which course to follow," it is not reversible error to give the instruction. *Swanson*, 273 Or at 140-41. Not surprisingly, under that standard of review, there are few reported Supreme Court decisions holding that it was error to deliver the emergency instruction. Thus, although the court urges that the instruction rarely, if ever, should be given, the court also holds that it rarely, if ever, is error to give it.

In response to that inherent contradiction in the Supreme Court's case law, this court has attempted to provide some reasonable limitations on the use of the emergency instruction. Notably, in *Templeton v. Smith*, 88 Or App 266, 744 P2d 1325 (1987), *rev den* 305 Or 45 (1988), this court held that, to warrant the use of an emergency instruction, there must be evidence not just of any emergency but of an "extraordinary" one. Explicitly relying on qualifications of the emergency rule suggested in *Prosser and Keeton on The Law of Torts* § 33, 196-97 (5th ed 1984), this court held that emergencies that arise in the ordinary course of driving a motor vehicle do not justify giving an emergency instruction. Other emergencies, defined as "extraordinary circumstances" that are not reasonably to be anticipated in the circumstances of ordinary driving, do justify giving the instruction. *Id.* at 269. *See also Scott v. Iverson*, 120 Or App 538, 541-42, 853 P2d 302 (1992), *rev den* 317 Or 486 (1993).

The majority does not explain, and I do not understand, how its decision can be squared with *Templeton*. The evidence shows that defendant was driving near Government Camp, on Mount Hood, in mid-November, when he encountered a "slick and icy" road. I find nothing particularly extraordinary about encountering ice on a mountain pass in November. Ice at Mount Hood is nothing more than a road condition that reasonably should be anticipated under the circumstances of ordinary driving. Therefore, if *Templeton* accurately states the law, the trial court erred in giving the emergency instruction in this case.

The problem is that *Templeton* does not accurately state the law. It conflicts with the Supreme Court's cases,

none of which draws a distinction between ordinary emergencies and extraordinary emergencies.[1] Under those cases, the primary inquiry is whether the driver was faced with a sudden danger that was not the result of his or her own negligence and required "quick action * * * as to which course to follow." *Swanson*, 273 Or at 140. Applying that standard, it was not reversible error for the trial court to have given the emergency instruction in this case. I would affirm on that basis. But I would not leave the bench and bar to wonder how the decision can be reconciled with *Templeton* and whether that case remains good law. I would overrule it, and leave it to the Supreme Court to impose limitations on the emergency doctrine or, better yet, abandon it altogether.

Riggs and De Muniz, JJ., join in this opinion.

---

[1] *Templeton* has, in fact, been characterized as virtually abolishing the emergency doctrine in Oregon. Jeffrey F. Ghent, *Modern Status of Sudden Emergency Doctrine*, 10 ALR 5th 681, 690 (1991).